of the morning New Falls Corp. v. LaHaye wait just a moment until this side gets settled you can go ahead Mr. Landry good morning your honors and may it please the court I represent New Falls Corporation which is the creditor in this bankruptcy appeal there are two plans that we're talking about there's one bankruptcy case we're talking about a plan that was confirmed in a prior bankruptcy case and the effect that that has on the obligation that we're called upon to look at in this case I wanted to jump back and let you know before the first bankruptcy what was the obligation we had two promissory notes executed by LaHaye Enterprises those promissory notes were secured by a security agreement on property of LaHaye Enterprises it was secured by the personal guarantees of the individuals Richard and Cindy LaHaye and it was secured by a mortgage that mortgage was granted by both LaHaye Enterprises and Cindy and Richard LaHaye on two pieces of property one property was owned by LaHaye Enterprises one property was owned by Mr. and Mrs. LaHaye that's where we were when the first bankruptcy was filed the question that we have to address first is what did the bankruptcy plan in the LaHaye Enterprises case do to the obligation how was the obligation modified or to what extent was it modified the bankruptcy plan proposed that the two promissory notes would be treated separately both claims would be allowed one for $280,000, one for $46,000 there would be a secured claim as to one note for $220,000 and a secured claim for the other note for $5,350 there would be an unsecured claim for the remaining balance that was the plan that was confirmed but the question that your honors have to look at is what is the res judicata effect of that plan on the claim that was subsequently made when Mr. and Mrs. LaHaye filed their own chapter law it becomes very important because there are a lot of issues that have been raised here but do we even have to get to res judicata I mean what about section 1141A which says I mean clearly if the company had you'd received a distribution from the company in the first bankruptcy for $225,000 the individuals would no longer be on the hook for that your debt would be, the amount you're owed would be reduced so why isn't it the same here it's just property but the bankruptcy court in the first bankruptcy said it's worth X and it's a reduction in the debt why aren't you bound by that because we didn't receive the distribution we did not receive it under the terms of the plan and I need you to read this the confirmation of this plan will constitute relief from the automatic stay to allow the debtor in New Falls to engage in such transactions as are necessary to carry out the provisions of the plan and the treatment of this class and the transfer of any assets or to allow New Falls to foreclose its mortgage on the property now in order to get that credit that was provided for in the plan the property would have had to come back to New Falls either by way of a voluntary transfer or by way of a foreclosure proceeding what we need to know is what did the plan not do first you instituted a foreclosure proceeding I think your client but what is also against some other property that they had so that's why it hasn't gone through again, the mortgage encumbered two pieces of property after this plan was confirmed we filed an executory proceeding against both properties because they were in one mortgage and under Louisiana law mortgage is indivisible that one mortgage allowed us to proceed to foreclose on both properties in one proceeding what the plan is argued to have done is it's argued to have reduced the LAHEY's guarantee obligation to $100,000 what it did not do and there's no argument that it did is reduce or change the LAHEY's mortgage obligation that's how we get to Sandy Ridge because in Sandy Ridge your honors made it clear that bankruptcy unless otherwise provided in the plan operates only as to the debtor so the plan that we're confronted with here says in order for LAHEY enterprises to be entitled to a credit it has to engage in such transactions as are necessary to carry out the provisions of the plan or we have to foreclose so as of today that hasn't happened so how does Sandy Ridge impact that and why would the valuation that was made in 2015 simply not be applicable remember your honors that the obligation of third parties in this case Cindy and Richard LAHEY cannot be changed by the bankruptcy unless it's provided for in the plan so in this case the mortgage obligation remains and the debt remains and if the debtor and another third party who was responsible upon confirmation of the debtor's plan it does not impact this other third party's in rem or in personam obligation then we have to find in this plan a provision that says what it doesn't say it could have said the plan will transfer a property free and clear or it will require within so many days that the parties execute a document but the plan doesn't say that the plan says it's confirmed go ye forth and do a deal and when you do the deal this is the credit will be applied that is the what is before the court and the bankruptcy court was asked to apply the concept of res judicata so what happened at the time that the LAHEY's filed their bankruptcy Mr. and Mrs. LAHEY the foreclosure proceeding was pending we had begun that proceeding just as the plan allowed but we had not concluded we filed a proof of claim in the LAHEY's bankruptcy that basically said the debt is the debt both promissory notes full amount all of the interest and we are secured under Louisiana law by the mortgage and that mortgage encumbers Mr. and Mrs. LAHEY's personal property immovable property but property they own it seems to me the issues you seem to agree that if the property had been transferred then you would be stuck with the value given in the first bankruptcy so it seems to me the key issue here was what was the triggering event for that reduction in the debt so I'm looking at the LLC the first bankruptcy the plan says the LAHEY's shall be entitled to a partial release of the guarantees of the debt upon confirmation of this plan in an amount equal to the value of the property surrendered under the plan the LAHEY's shall therefore be liable only for the remaining balance of $100,000 focusing on that language tell me because that's what they rely on tell me why you win with that because there are two obligations that the LAHEY's have their guarantee obligation that's their personal liability how much do they have to come out of pocket their property is also encumbered it is mortgaged to secure LAHEY Enterprise's bankruptcy LAHEY Enterprise's debt and the plan did not modify that obligation it gave them the ability to do it it gave them the opportunity to do it but they basically chose to stall well maybe the plan maybe someone sort of objected to that plan and said look it shouldn't be a partial release shouldn't occur upon confirmation as the first bankruptcy plan said but all these other things should have had to happen I mean it seems to me you're sort of saying that the language in the first plan was not proper or fair no, no judge we're stuck with that we're stuck with what's in this document and what I'm saying is let's read the document because the argument is the plan changed the guarantee obligation and I'm saying okay what if it did? how does that change the mortgage obligation? it's a different obligation one is in REM one is in PERSONA under Louisiana law when you mortgage a property to secure the debt of another which is basically what the LAHEY's did that mortgage encumbers the entirety of the property for the full amount of the debt so in order to discharge that under Sandy Ridge they would have been entitled the LAHEY's as the non-debtor of all of the things being equal without the bankruptcy if we had foreclosed on the LAHEY Enterprises property the debt would have been reduced by the purchase price of the sheriff's sale well that sheriff's sale hasn't happened yet because of the automatic stay and Mr. St. Germain has basically said well that's your fault no that's that's what is allowed by the process one, as a secured credit so you're saying it would only be reduced by whatever the sale is why is that contrary to the first plan saying it's reduced to $100,000 it would be see again two different debts one is in PERSONA one is in REM they could have written a personal check for $100,000 after this and they would have been out personally but their property would still have been encumbered to the full amount of the debt less than $100,000 they paid okay what they did not do I'm sorry this gets me back into Sandy Ridge I'm not sure how it helps you because the case says that guarantees are not guarantors are not released from the unsecured sums which in this case would be the $100,000 left over after crediting the value of the grocery store that the LLC surrendered I don't see if you're saying that it was really guaranteed and it was secure via the mortgage then I'm not sure that the Sandy Ridge case helps you can you help us with that certainly Judge Elrod in Sandy Ridge your honors basically said that the discharge and the confirmation is limited in effect to the debtor okay that would mean that mortgages granted by third parties to secure the obligation of the debtor would not be modified what Sandy Ridge looked at was in particular a guarantee in Sandy Ridge you did not have a circumstance of the guarantors also mortgaging their property to secure the debt that's where this is a little different but the theory behind Sandy Ridge is the same if the Lajes had wanted to obtain that discharge they could have filed a joint petition or they could file consolidated petitions at that time what they were trying to do was skirt that and I think your honors have indicated that if you want the benefit of a bankruptcy discharge you have to be the debtor they weren't so therefore they're trying to force a round peg into a square hole when they would rely on a plan which they drafted which basically says this credit is not going to you know after the plan is confirmed here's how we're going to progress and then they didn't progress so the other the issue of res judicata is also interesting but again remember the valuation of a piece of real estate in this case we've got $5,000 worth of movables and a bunch of real estate but that valuation was as of the date that the first bankruptcy plan was filed or as of the date of the confirmation in 20 that was 2015 in 2016 when the Laje's bankruptcy is filed that property is a different property and the last thing judges the appeal on the confirmation we've agreed that in the order confirming the plan that if we are correct in our allegations concerning the claim of the action that we can reassert those arguments when the confirmation was reversed thank you your honor good morning I'm not quite set with your clock yet I'm sorry there we go good morning may it please the court my name is Tom St. Germain I represent Richard and Cindy Laje I think the most important point is that the confirmed plan in the Laje Enterprises case is binding on New Falls and controls the issues in the Richard and Cindy Laje so why all these years later hasn't the grocery store land been turned over we offered to turn it over we've offered to turn it over many times we've offered to dash on it we've offered to help them sell it nothing's happened basically no one wants it because the value is deteriorating you have to maintain it and it's not productive land that's correct and apparently they don't want it because they don't they don't like taking back commercial property because they don't want the liability environmental liability or whatever else may be lurking beneath the surface but it has not been taken back but his argument that well it's because you all have objected to the foreclosure proceedings why is that wrong no we offered subsequently to give it back many times we said take it back take it please and they said no we don't want to do that and we've actually there was a time if you look procedurally and this really goes to settlement but there was a time when this appeal was suspended and the reason for that is we were trying to assist them with selling the property because they didn't want to take it back so we said okay we'll try to help you sell it and see if we can work something out that didn't work so we're here today so with respect to let me ask about that I don't in case you're going to look at the language that your friend on the other side particularly likes confirmation will constitute relief two parties will engage in transactions that are necessary did that start happening immediately and is there documentation of that in the record did what start happening well what was supposed to happen after the confirmation of the plans which is the two sides would engage in such transactions as are necessary to carry out the provisions of this plan is there some documentation of a month later or whatever else that's in the record that here's what your client was trying to do yeah they we attempted to well I'm asking is that in the record is it in the record I believe it's in the record to the extent that it may be in the Lahey Enterprises plan that we you know attempted to resolve this issue by you know there were settlement discussions that happened throughout the year  were trying to try to resolve this $100,000 all right thank you thank you with respect to and as I indicated either through section 1141 race judicata or a collateral estoppel the plan is binding on new falls and I think that Mr. Landry is here agreed to that and as a court can you address that the race judicata point if we were to decide that race judicata is the appropriate doctrine for determining the effect of bankruptcy on the subsequent it's not Lahey it's Lahey how do you say it again Lahey the Lahey bankruptcy what is your best argument that the two bankruptcies present the same cause of action well the they are different parties as argued in the brief they are different parties but there's case law that indicates that if the Lahey's interests were adequately protected in the Lahey enterprises bankruptcy then that can be considered essentially the same party and so for that reason it's essentially the same case or we can go under collateral estoppel and say it's the same issue that was presented and then there was an identity of parties because one was Lahey's one was their company and it's 100% the Lahey enterprises was 100% owned by the Lahey's so for those reasons it could be we believe race judicata or collateral estoppel or section 1141 as we indicated the plan states that Lahey's would receive a partial release of the guarantees upon confirmation the court correctly earlier pointed out that this would happen upon confirmation not upon transfer of the property thereafter the only liability would be for the $100,000 remaining balance in this language there's no requirement that any foreclosure or other transfer of title is required for the release of to take effect just confirmation of the plan the plan was the Lahey enterprises plan was confirmed over New Falls objection but the order was never appealed so the Sandy Ridge typically a Chapter 11 plan can't release a third party guarantor however if a plan is confirmed and contains a release then the release will be effective and have race judicata effect that's the whole thing and Sandy Ridge explicitly recognized the exception the general rule which was that the guarantor is not discharged in bankruptcy the guarantor is on the hook that's the whole point of the guarantee if the main debtor goes bankrupt you have a guarantee to go after someone else what it's saying is if the debt is reduced the debt you guarantee is in a new amount and it's not a complete release it was a reduction to the $100,000 and the Lajes admit that was the debt they had to deal with and they could not reach an agreement with New Falls and as a result they had to file the personal chapter 11 case with respect to the argument that there's two liabilities somehow that there's one liability for the person and then there's one liability for the land I think pretty clearly the release provision in the Lajes enterprises confirmed plan reduces the liability on the notes period I don't see how there's any second liability that somehow survives and in addition if any of the Lajes enterprises debt does survive in other words over and above the $100,000 then New Falls is enjoined from enforcing it pursuant to section 15.4 of the Lajes enterprises plan the only thing that New Falls could enforce was the $100,000 remaining balance on their claim since the $100,000 was dealt now this $100,000 was dealt with in the Richard and Cindy Lajes confirmed plan and Mr. and Mrs. Lajes are making payments to New Falls currently under that confirmed plan. I should point out one more thing which is this argument that somehow there's two there's an in-personam and then there's an in-rim liability that there's this separation this argument was only raised was not raised at the bankruptcy court level and was only raised at the oral argument at the district court level therefore it may not have been properly preserved for appeal. Finally as we argued in the brief New Falls should be a stop from argument that Lajes enterprises should not be  bankruptcy agreement. As we previously discussed Lajes tried to turn over the grocery store and equipment which has continued to depreciate in value but New Falls has never accepted that return. And I'll answer any questions the court may have. I think that's all we have on the     question is why has the client not been given the property? Well first off judge to respond to judge south works question they wouldn't do anything they ignored us until we filed our executive process proceed they just ignored us. They were supposed to under the plan pay their unsecured portion they never did. So why hasn't my client because by the time we were prepared to take it back your honor basically hit the nail on the head. After a year the property has been abandoned it has not been used it was a mess. So to respond to the concept of did we make the argument before the bankruptcy judge? I don't think I could have made that argument more strongly. I said the mortgage is still valid as to the property. That's why I'm arguing here the mortgage is still valid and maybe I think the argument is clear in the mind of a Louisiana security rights attorney that the mortgage is a guarantee. It is and your honor can review the transcript but clearly we raised that issue in there the validity of the mortgage and the fact that we're still secured by that mortgage and we also raised it very strongly in the district court both in brief and in argument. I guess I'm less concerned about what was raised below in this bankruptcy than why all these difficulties you're talking about weren't raised in the first bankruptcy of the LLC and telling that bankruptcy judge look this is going to be a mess you shouldn't make this credit effective on confirmation. This is going to be a big problem. Well judge again that question can be asked to the Lahays but we're there. Why was it done that way? Because we assumed that the parties would deal in good faith and again there's nothing in the record to support whether my clients were in good faith, their clients were in good faith. You can understand that if we're willing to take back a piece of property and we give it a value we're ready to go. That's what the plan says. As I recall the concept of doing transactions implies a Louisiana giving in payment. A deed in foreclosure that would have happened almost immediately because the Lahays had also announced their intention to file their own personal bankruptcy right after that and then the whole thing would be resolved. But it was up to both of us to come together because we can't have a transaction without both. We inquired, we inquired, we inquired. Mr. St. Germain didn't become involved in this case until the Lahays filed their individual bankruptcies. The lawyer that we were dealing with that represented the enterprises stopped responding. So... Did the parties... Did you avail yourself of the circuit mediation program that offers free mediation? Yes, we did, Judge. And in fact, I didn't want to get into... I don't want to lose that. I just want to know if you did try to do that. Yes, we did. And that's why this is a 2019 case coming up for argument today. Any further questions, Your Honors? Thank you very much. Thank you, Judge. The mediation program has worked sometimes. But I appreciate that it has worked in other cases. Apparently not.